UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

GPDEV, LLC AND SIMONS
EXPLORATION, INC.,

    Plaintiffs,

Case No.:

v.

TEAM SYSTEMS INTERNATIONAL, LLC,

    Defendant.
_____/

# COMPLAINT

Plaintiffs, GPDEV, LLC and SIMONS EXPLORATION INC. d/b/a ARCHANGEL INTERNATIONAL, bring this action against Defendant, TEAM SYSTEMS INTERNATIONAL LLC, and allege:

## PARTIES

1. Plaintiff GPDEV, LLC is a limited liability company under the laws of the State of California, with a principal place of business at 4 Park Plaza Suite 700, Irvine, CA 92614. No member is a citizen of a state other than California.

2. Plaintiff Simon Explorations, Inc. is a corporation organized under the laws of the State of Colorado, with a principal place of business at 5082 E. Hampden Ave., Suite 289, Denver, CO 80222. This Plaintiff does business as Archangel International.

1

3. Defendant Team Systems International, LLC ("TSI") is a limited liability company organized under the laws of the state of Delaware, with its principal place of business at 822 A1A North, Suite 310, Ponte Vedra Beach, FL 32082. TSI is registered to do business in Florida, and its members are Florida or Virginia residents.

## JURISDICTION AND VENUE

4. This is an action pursuant to Section 86.011 et seq., *Florida Statutes,* to declare rights, status or relation between the parties with respect to their Agreement of August 16, 2017, and for additional and supplemental relief and other relief under Florida law which is controlling per ¶ 6 for "any dispute arising out of and/or concerning in any way the terms and conditions of this Agreement."

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, in that there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.

6. Venue is proper in this Court pursuant to the Legal Venue clause in the parties' Agreement (¶ 6), whereby Plaintiffs and Defendant agreed: "[L]egal venue for any unresolved disputes is in Northern Florida, in any court of competent jurisdiction."

7. An actual case or controversy exists between the parties. Plaintiffs believe they are entitled to sums due them in respect to their Agreement with

2

Defendant that have not been accounted for or paid to them, and are entitled to receive such sums in the future, which Defendant denies; and that Defendant has breached its obligations and responsibilities to Plaintiffs in respect to the Agreement and has not performed in good faith and consistent with their relation, which Defendant also denies.

## **FACTUAL ALLEGATIONS**

8. On August 16, 2017, the parties entered a "Consulting Agreement," copy of which is attached as Exhibit 1.

9. In recognition of Plaintiffs having sourced bottled water for TSI to supply to the U.S. Department of Homeland Security, Federal Emergency Management Agency ("FEMA") and other agencies, the Consulting Agreement recited that TSI would pay Plaintiffs a success fee of 25% of the net amount of income TSI actually received from the amounts invoiced and paid by the agencies, net income being defined as Gross Revenue less Cost of Goods Sold + Transportation + Direct Labor Expenses.

10. The Agreement provided for TSI to pay Plaintiffs a "commission" of 25% of net income that TSI actually realizes from amounts paid by the referenced governmental agencies with which subsequent contracts were made by TSI for the supply of bottled water through Niagara Bottling LLC.

3

11. The parties anticipated that Niagara would be an acceptable bottle water supply source to FEMA upon contract award.

12. The Agreement provided Plaintiffs the right to view, upon demand, Prime Task Order Awards, invoices from the intended water and transportation contractors and any other direct expense receipts that are applied to reduce net income.

13. The Agreement provided that its term "shall be with respect to any contracts which TSI uses the supply of bottled water through Niagara Bottling LLC."

14. The Agreement also contained a merger clause as to any understanding not stated, and an Amendments Clause as to any modification or change not being effective unless in writing and signed by the parties.

15. The "Consulting Agreement" of August 16, 2017, was the result of the parties' efforts to advance a team proposal for award of a FEMA contract to supply bottled water to emergency disaster areas upon order directive, with TSI as the approved government contractor.

16. On or about September 5, 2017, FEMA awarded TSI a five-year contract with a $68 million cap to supply bottled water, regardless of the bottled water supplier. Niagara Bottling was specified in the bid and accepted by FEMA as approved bottle water source supplier.

4842-2362-4307
10482/0003

17. Shortly afterward, Hurricane Maria hit Puerto Rico, and FEMA ordered 12 million liters of bottled water pursuant to its contract with TSI.

18. TSI contacted Plaintiffs to secure other potential bottled water suppliers, and informed Plaintiffs that FEMA's contracting officer would allow other bottled water supply companies.

19. TSI was agreeable to any satisfactory substitute water supplier that could be found.

20. Plaintiffs used their efforts and relations to negotiate with various potential suppliers and secured a satisfactory commitment from Nestle.

21. FEMA's contracting officer approved Nestle as a water supplier, and then TSI contracted with Nestle to provide approximately 50% of FEMA's order (totaling about six million liters of bottled water).

22. TSI acknowledged that Plaintiffs' 25% commission would be paid with regard to the Nestle bottled water, but ultimately only paid 12.5%. Later, TSI promised to pay the other 12.5% when TSI received its next payment from FEMA, but TSI has made no such payment to date.

23. Nor has TSI paid the 25% commission fee on the full amount of net profit earned for supplying bottled water ordered by FEMA for the Hurricane Maria disaster area in Puerto Rico. TSI has not made accurate accounting of net profit and

5

refuses to provide documentation pertinent to the determination of net profits under its FEMA contracts and orders.

24. In early September 2017, TSI also requested Plaintiffs' assisting in securing transportation of bottled water to be supplied to Puerto Rico when the initially contemplated transport logistics arrangements failed to materialize. Plaintiffs expended diligent effort in this regard, and secured other transport contractors, but TSI then told Plaintiffs it had been able to get logistics covered.

25. TSI apparently worked with FEMA for bottled water to be deliverd to Jacksonville as a staging point for ultimate transport to Puerto Rico, and to receive a separate contract for transport from the staging base in Jacksonville to Puerto Rico, including compensation for water storage and equipment return.

26. TSI has declined to account to Plaintiffs for the income received and net profit earned in connection with these separated elements of supplying bottled water ordered by FEMA pursuant to awarded contract.

27. Plaintiffs believe TSI has been awarded FEMA orders totaling some $36.6 million on its FEMA contracts regarding supply of bottled water to Puerto Rico in response to Hurricane Maria. Income paid by FEMA to TSI with respect to the separated transport supply components is estimated to be some $28 million with significant unaccounted for profit margins.

6

28. TSI contends that the Agreement only includes income for water delivered to the Jacksonville staging area, not to Puerto Rico or other emergency disaster area for which water was supplied.

29. The net profit percentage accounting required of TSI by the Consulting Agreement with Plaintiffs conferred responsibility that TSI accepted under circumstances giving rise to the existence of trust among the parties for TSI to maximize reported profits.

30. Contrary to its obligations to perform its agreement with Plaintiff in good faith and its responsibility to profitably operate under contract with FEMA for supply of bottled water for emergency disaster areas, TSI arranged for a staging area to separate its contract components and cut Plaintiffs out of their commission profits for supplying the water for the emergency destination area for which FEMA orders were placed.

31. As the FEMA contract continues, more orders for bottled water supply to emergency areas are likely to be received. In mid-2018, TSI asked Plaintiffs for introduction to other water suppliers for the FEMA contract. Plaintiffs introduced various companies and sent credit applications to them, and TSI promised that its agreement should encompass those companies.

4842-2362-4307
10482/0003

# COUNT I

## SUBSTITUTED BOTTLED WATER SUPPLIER

32. Plaintiffs restate and reallege paragraphs 1 through 31 above.

33. Dispute exists between the parties whether TSI and Plaintiffs effected an oral modification of the contract, acted upon through course of dealing, whereby net profit would be paid under the Consulting Agreement for bottled water supplied by Nestle or other suppliers besides Niagara, arranged for by Plaintiffs, accepted by TSI and approved by FEMA's contracting officer.

34. Through their course of conduct, the parties recognized that Nestle or any other bottled water supplier approved by FEMA's contracting officer could be substituted for Niagara Bottling, LLC under the Agreement.

35. By performing the FEMA contract with bottled water supplied by Nestle or other sources, TSI also acquiesced in, or waived any right to object to, any approved water supplier used to fulfill that contract, and could thereby not be excused from payment of the commission fee on net profits earned with respect to such supplied water.

36. E-mail communication substantiate consideration for multiple bottled water supply companies other than Niagara, and a written text message from TSI on September 10, 2017 was to "get [] more water suppliers. The more the better."

37. Plaintiffs devoted time, effort and expense in connection with and in reliance on parties' Agreement to substitute and be equally paid for water suppliers other than Niagara that were approved by the FEMA contracting officers.

38. Moreover, reference to "Niagara Bottling LLC" in the Agreement providing for payment of 25% commission fee on net income actually realized from TSI contracts with government agencies for the supply of bottled water through Niagara Bottling LLC, served only a standard for bottled water supplied.

39. Bottled water approved to be used by the FEMA contracting officer met that standard, so that Nestle bottled water or other equivalent sources could be used, and the net income commission would be due Plaintiffs for any such supplied bottled water.

40. Plaintiffs have not been paid the contracted 25% commission fee for water supplied by TSI for FEMA that is due under the Consulting Agreement.

WHEREFORE, Plaintiffs request that the Court determine whether the Agreement between the parties covers or extends, originally or by modification through course of conduct, action in reliance, and confirmatory communication, to allow the substitution of Nestle or other suppliers satisfactory to FEMA in place of Niagara; and to award all amount owed to Plaintiffs by TSI in respect thereto, together with interest allowed by law, and reasonable costs; and to grant such other relief as may be just and proper.

4842-2362-4307
10482/0003

# COUNT II

## FAILURE TO ACCOUNT FOR ALL NET PROFIT
## FROM SUPPLYING APPROVED BOTTLED WATER

41. Plaintiffs restate and reallege paragraphs 1 through 31 above.

42. The Agreement between the parties called for TSI to pay 25% commission fee to Plaintiffs on all net profit from the supply of bottled water acceptable to the government, with "supply" including transportation, *i.e.* providing the logistics to provide approved bottle water ordered by FEMA for the emergency location.

43. "Supply" means "to provide for" or "to furnish." "Provide" means to supply something, and "furnish" means "to provide what is needed."

44. Thus, TSI was to pay Plaintiff's 25% of the net income it realized in providing FEMA with a supply of bottled water at needed locations.

45. By its very nature, supply includes the logistics, transportation, drop trailer, cross docking, container, shipping and storage to the final needed emergency destination such as Puerto Rico.

46. By using Jacksonville as a staging area, and dividing the transportation part of supplying water that FEMA needed for a disaster area, TSI has attempted to cut Plaintiffs out of a significant portion of net profits for which they were entitled to full 25% commission fee pursuant to their Consulting Agreement.

4842-2362-4307
10482/0003

47. TSI breached the implied covenant of good faith by setting up and accounting for transportation of supplied water only for the shipment to Jacksonville, not to the final destinations of the emergency for which the water was needed.

48. Dispute exists between the parties as to whether Plaintiffs should be compensated on all net profits realized from the supply of bottled water, including logistics and transportation associated with the supply through its delivery to Puerto Rico or other emergency destination for which bottled water was ordered.

WHEREFORE, Plaintiffs request that the Court declare that the "Net Profits" referenced in the parties' Consulting Agreement include logistics and transportation to Puerto Rico or other needed destination for which orders were placed; award Plaintiffs their full 25% of the total net profit due per the Agreement, plus interest allowed by law; award their costs and expenses of litigation; and order such other relief as may be just and proper.

## COUNT III

## REFUSAL TO PROVIDE RECORDS

49. Plaintiffs restate and reallege paragraphs 1 through 31 of this Complaint.

50. Plaintiffs have requested on numerous occasions that TSI produce Prime Contract Task Orders, invoices and expense receipts, and pertinent contracts and records need to validate their profit percentage commission.

11

51. TSI has only provided a spreadsheet that its claims reflects the amount to be paid Plaintiffs.

52. Plaintiffs are entitled under their Agreement with TSI to review all records related to the FEMA contract(s) with TSI for the supply of bottled water.

WHEREFORE, Plaintiffs request that the Court require TSI to produce for Plaintiffs' review all records pertinent to its government contracts for supply of bottled water, and to award to Plaintiffs their reasonable attorneys' fees to enforce their right to review these records as damages for TSI's failure to produce same upon demand as required by the Agreement; and to grant such other relief as may be just and proper.

## COUNT IV

## FUTURE CONTRACTS AND ORDERS ARE SUBJECT TO THE AGREEMENT

53. Plaintiffs restate and reallege paragraphs 1 through 31 above.

54. Besides contracts or orders for Hurricane Maria in Puerto Rico, Plaintiffs believe that TSI has acquired or may acquire other contracts or orders with governmental agencies for supply of bottled water that are or would be subject to Plaintiffs' 25% commission of net income per the Consulting Agreement.

55. TSI is obligated in good faith to secure additional contracts and orders and account for net profits realized with respect to same under that Agreement pursuant to its continuing terms.

12

56. Plaintiffs should be compensated for any contracts and orders that TSI has or will have with governmental agencies for the supply of bottled water since entering the Consulting Agreement with Plaintiffs.

57. Failure by TSI to attempt to secure further orders or contracts, or to account for orders or contracts performed, is a breach of the Consulting Agreement and TSI's obligation to perform same in good faith.

WHEREFORE, Plaintiffs request that the Court declare that Plaintiffs are entitled to 25% of the net profit of any contracts or orders that are covered by or related to the Consulting Agreement; award Plaintiffs their percentage share of such profits realized and order that commission payment be made for profits that may be realized in the future; and to order such other relief as may be just and proper.

## COUNT V

## EQUITABLE ACCOUNTING

58. Plaintiffs restate and reallege paragraphs 1 through 31 and 49 through 52 above.

59. Plaintiffs are unable to ascertain the amount of percentage of net profits that they are entitled to receive pursuant to the Consulting Agreement with TSI and TSI's fiduciary responsibilities thereunder and in connection therewith, including the trust accepted by TSI.

4842-2362-4307
10482/0003

60. Plaintiffs are entitled to equitable accounting from TSI of the income and net profit earned and/or received from governmental agency contracts or orders for supply of bottled water, obligating TSI to prove the proprietary and accuracy of income or expenses accounted for.

WHEREFORE, Plaintiffs request that the Court determine that they are entitled to an equitable accounting from TSI and for order of a full and complete account be made, and order payment of all amounts and property accounted for and paid, with interest allowed by law; to award costs of this action, including costs incurred to refute TSI's accounting as may be inaccurate or incomplete; and to order such other relief as may be just and proper.

Respectfully submitted this 21st day of September, 2018.

    __s/Stephen Turner_____
    M. STEPHEN TURNER, P.A.
    Florida Bar No. 0095691
    stephen.turner@nelsonmullins.com
    maria.ubieta@nelsonmullins.com
    cassandra.finn@nelsonmullins.com
    LEONARD M. COLLINS
    Florida Bar No. 423210
    leonard.collins@nelsonmullins.com
    susan.huss@nelsonmullins.com
    **NELSON MULLINS BROAD AND CASSEL**
    215 South Monroe Street, Suite 400 (32301)
    P.O. Drawer 11300
    Tallahassee, Florida 32302
    Tel: (850) 681-6810; Fax: (850) 681-9792
    ***Attorneys for Plaintiffs, GPDEV, LLC and***
    ***SIMONS EXPLORATION, INC.***

4842-2362-4307
10482/0003