**RYAN JON ORNER**
**RJORNER & COMPANY, LLC**
300 South Duval Street, Unit 707
Tallahassee, Florida 33201
(212) 535-9593 • rjorner@rjorner.com

## SUMMARY OF FINDINGS

In order to reach the opinions, and support the calculations and findings I have made in this case, I reviewed a significant volume of documents in the record, specifically the following sets of document production from the various parties and depositions:

TSI Bates 1-239
TSI Bates 240-249
TSI Bates 250-443
TSI Bates 444-582
TSI 2/21/20 Document 123-1 through 123-21, p24
TSI May 2020 Records D000001– D005235
TSI May 2020 Records D005241 –D022481
GPDEV-SIMONS Bates 1-653
GPDEV-SIMONS Bates 654-665
GPDEV-SIMONS Bates 654-665
GPDEV-SIMONS Bates 666-840
GPDEV-SIMONS Bates 841-966
Bering Straits Bates 1-8256
Nestle Waters North America Bates 000001 – 000319
Coke Florida Bates 000001 – 000034
FEMA Bates 000001 – FEMA 000235
FEMA 11/19/19 Report
FEMA 01/22/20 Pages
FEMA Delivery Order HSFE7017D0021 – HSFE7017J0273
Deposition of Deborah Mott, Vol I
Deposition of Deborah Mott, Vol II
Deposition of Christopher Mott
Deposition of Jordan Simons
Deposition of George Peterson
Florida Department of State, Division of Corporations, Coakley Logistics Services, LLC filings
Delaware Department of State, Division of Corporations, Coakley Logistics, LLC
FASB Accounting Standards Codification paragraphs 340-40-25-7; 470-40-05-2; 606-10-05-4
United States Bankruptcy Court Case 6:15-bk-07397-CCJ Doc 583 Filed 08/05/19
GovTribe – Team Systems International, LLC – contract details
GovTribe – contract potential value – HSFE7017D0021

I have had access to all documents in Plaintiff's counsel's possession and, based on my review of this record, I have reached the following conclusions as detailed in the attached spreadsheets and supporting schedules, and findings summarized below:

**I - Summary of Amounts Due Plaintiffs from FEMA Water Supply Contract Profits, as of May 2019.**

| | | |
|---|---|---|
| TOTAL FEMA Water Contract Gross Revenues Paid to TSI (Schedules A and A1) | | $37,579,548 |
| TOTAL Supported Contract Cost of Goods and Direct Expenses (Schedules B and B1) | | $12,196,381 |
| TOTAL Extrapolated Expenses with Limited and/or No Detailed Record (Schedule B5) | | $    371,380 |
| TOTAL Net Income as Defined by Parties' Agreement (Schedule C) | | $25,011,787 |
| TSI Net Income Profit Sharing | 75.00% | $18,758,840 |
| Plaintiffs' Net Income Profit Sharing | 25.00% | $  6,252,947 |
| | 100.00% | $25,011,787 |
| Amounts Paid to Plaintiffs | | $      998,370 |
| Net Income Profit Sharing Amounts Due to Plaintiffs (Schedule C) | | $  5,254,577 |

Based on the available record and document production noted above, the records which were relied on to directly support the detailed findings and conclusions summarized above follow:

    **A. Documents supporting the analysis of $37,579,548 of Total FEMA Water Contract Gross Revenues Paid to TSI on Schedules A and A1, for the supply of 12,479,040 liters of water:**

- TSI 67
- TSI 68
- TSI 448
- TSI 449
- Bering Straits 00007411-7413
- FEMA 01/22/20 pp 2-5
- FEMA 11/19/19 Report pg 2
- TSI 2/21/20 Document 123-1
- TSI 2/21/20 Document 123-4
- TSI 2/21/20 Document 123-5
- TSI 2/21/20 Document 123-6
- TSI 2/21/20 Document 123-7
- TSI D019102
- TSI D019082-19100
- FASB Accounting Standards Codification paragraph 606-10-05-4
- GovTribe - Team Systems International, LLC – contract details
- FEMA Delivery Order HSFE7017D0021 – HSFE7017J0273
- FEMA 11/19/19 Report – IDIQ/BPA Obligation by Vendor Report
- FEMA Contract Ceiling Amount – 5/20/19 (FEMA 000050)
- GovTribe – contract potential value – HSFE7017D0021

B.  **From the records reviewed, documents supporting the analysis of Total Supported Water Contract Cost of Goods and Direct Expenses of $12,196,381 that were incurred and paid by TSI under the Contract, and reflected on Schedule B and B1, follow:**

- TSI 67
- TSI 68
- TSI 000426-436
- TSI 000437-441
- Bering Straits 00002987-2993
- Bering Straits 00003002-3010
- Bering Straits 00002885-2890
- Bering Straits 00003433-3434
- Bering Straits 00003962
- Bering Straits 00003972-4024
- Bering Straits 00003554-3574
- Bering Straits 00003453-3461
- Bering Straits 00008205
- Bering Straits 00008207
- Bering Straits 00007021-7082
- Bering Straits 00007083-7151
- Bering Straits 00007152-7233
- Bering Straits 00006840-6931
- Bering Straits 00006932-7020
- Bering Straits 00008198-8204
- Bering Straits 00008198-8218
- TSI 000313
- TSI 000331
- TSI D015911-15913
- TSI D015951-15952
- Bering Straits 00003462-3473
- Bering Straits 00006669-6677
- Bering Straits 00004884-4926
- Bering Straits 00007570-7594
- TSI 000397-420
- TSI D018926-18947
- TSI D018948-18969
- TSI D018970-18991
- TSI D019001-19022
- TSI D019023-19047
- TSI D020001-20026
- TSI D016091-16116
- TSI D021574-21590
- TSI D021560-21573
- TSI D021548-21559

- TSI D021534, TSI D021540-21547
- TSI D019067-19070
- TSI D019065
- TSI D019066
- TSI D019062-19064
- TSI D019071-19075
- TSI D019076-19077
- TSI D019060-19061
- Bering Straits 00003435-3449
- TSI 000368
- Bering Straits 00002809-2816
- Bering Straits 00003486-3489
- Bering Straits 00004037
- Bering Straits 00006686-6688
- Bering Straits 00003499-3510
- Bering Straits 00003063-3067
- Bering Straits 00003511-3530
- Bering Straits 00006682
- TSI D016080-16081, TSI D019104-19110, TSI D020053
- TSI 000257
- TSI 2/21/20 Document 123-21, p 8
- TSI D021525-21530
- TSI 000421
- Bering Straits 00003073-3074
- TSI 000280-288
- TSI 000289-302
- TSI 000303-312
- TSI 2/21/20 Document 123-15
- TSI D021752
- TSI D021753
- TSI D021754
- TSI D021755, TSI D021706-21719
- Bering Straits 00002776-2785
- Bering Straits 00003542-3553
- TSI D019112
- Bering Straits 00005424-5459
- Bering Straits 00004124-4129
- Bering Straits 00003087-3432
- Bering Straits 00003014-3019
- Bering Straits 00004819
- Bering Straits 00004821
- Bering Straits 00004823
- Bering Straits 00004825
- Bering Straits 00005467
- Bering Straits 00005469
- Bering Straits 00005471

- Bering Straits 00005473
- TSI 000269-271
- TSI 000272-275
- TSI D021655-21657
- TSI D021896-21897
- TSI D021649
- TSI D021825-21828
- TSI D021645
- TSI D021641-21642
- TSI D021631-21638
- TSI D021619-21622
- TSI D021944-21947
- TSI D021596-21597
- TSI 2/21/20 Document 123-2, pp 1-6
- TSI D021671-21674
- TSI D021782-21789
- TIS D021667-21668
- TSI D021732-21733
- TSI D021872-21877
- TSI D021659-21660
- TSI D021813-21814
- TSI D021792-21793
- TSI D021809-21810
- TSI D021592-21593
- TSI D021940-21942
- TSI D021795
- TSI D021722
- TSI D021720
- TSI D021721
- TSI D019112-19113
- TSI 000258
- TSI 000256
- TSI 000259
- TSI 000260

These documents, contracts, invoices, email exchanges, among other evidence, support in great detail, the analysis of Total Supported Contract Cost of Goods and Direct Expenses of $12,196,381 that were incurred and paid by TSI under the Contract.

There were also certain records of costs incurred by other vendors for the supply of bottle water to FEMA in excess of this total, however, the total available record showed that the amount TSI actually paid was $12,196,381 under the contract.

TSI paid $11,683,246 to Bering Straits. TSI also paid $513,135 directly to vendors for expenses under the contract. The $12,196,381 actually paid by TSI under the contract are the only relevant costs to include in the analysis of Total Supported Contract Cost of

Goods and Direct Expenses under the FEMA Water Contract, which analysis is reflected on Schedule B and B1. As discussed below, there are other amounts that TSI claimed were paid that were questionable, unsupportable, and/or unsubstantiated.

**Based on the available record and document production noted above, there were documents and expense listings produced by TSI which detailed Additional TSI Finance Costs, as shown on Schedule B2:**

TSI chose to partner with Bering Straits Native Corporation as a bridge financing source, for which additional finance costs were incurred for TSI. Under TSI's separate arrangement with Bering Straits (Bering Straits 00007256), at TSI's direction, Bering Straits would finance payments to facilitate the acquisition of the FEMA water, finance the payments for various trucking and logistics services TSI arranged to store and transport the water within the continental United States to the ports of Jacksonville, FL and Savannah, GA, and financed the payments for the loading of, and maritime barge transportation to, Puerto Rico. In the record, there were numerous opportunities where TSI was presented a credit application to complete in order to establish their creditworthiness to make millions of dollars in purchases of water, and engage millions of additional dollars in logistics services – however, the record shows TSI provided the Bering Straits contact to complete the credit applications in order to bridge finance the payments until TSI received payments from FEMA under the water contract. This is bridge financing to TSI, with relatively low risk to Bering Straits as the US Government through FEMA is the customer and will pay under the contract. This structure is a financing arrangement as outlined in paragraph 470-40-05-2 of the FASB Accounting Standards Codification. The financing costs under this arrangement which TSI made separately with Bering Straits, however, are TSI's costs to bear, not their contract partners' cost under the FEMA Water Supply Contract.

For bridge financing these payments, Bering Straits would receive (1) a fixed 6% additional financing fee above the total payments financed for the transportation to Puerto Rico, and (2) would also receive as a financing fee the difference between the lower price per liter paid for water under the contract and a higher set price per liter of water agreed to between TSI and Bering Straits – the combination of these bridge financing fees was intended to "provide BSLS the 33% return discussed prior to the DO award" (Bering Straits 00007400).

As detailed in TSI 67 and TSI 68, the cost of water per liter for Niagara and Nestlé were $0.1625 and $0.2500, respectively, with the transport costs to Jacksonville and Savannah of $0.13 and $0.11. Therefore the total cost per liter to acquire and transport Niagara and Nestlé water, respectively, to Jacksonville and Savannah (Zone 1) were $0.2925 and $0.36. Under the agreement between TSI and Bering Straits, Bering Straits was to be paid $0.42 per liter to Zone 1, retaining the difference as a financing fee which totaled $1,162,568 based on 12,235,866 liters of water purchased and delivered under the FEMA Water Supply Contract. Bering Straits would also be paid the 6% financing fee above the costs financed for the transportation from Zone 1 to Puerto Rico, to a maximum or Not To Exceed price for transportation of $0.62 per liter based on 12,235,866 liters, which

total of $7,586,237 was met, and the corresponding financing fee limited to $114,313. There were additional costs for the shipping container rental and insurance during the extended time in Puerto Rico and return which Bering Straits financed, totaling $447,822, upon which the 6% financing fee totaled $26,869. Combined, TSI incurred $1,303,750 in additional financing fees to use Bering Straits bank as their financing arm, which fees have been excluded from the "I - Summary of Amounts Due Plaintiffs from FEMA Water Supply Contract Profits as of May 2019" whereas these financing fees are included in "II - Summary of Amounts Due Plaintiffs from FEMA Water Supply Contract Profits as of May 2019 Adjusted to Include Financing Costs."

**Based on the available record and document production noted above, there were documents and expense listings produced by TSI which listed Questionable Expenses with Limited and/or Conflicting Record, as shown on Schedule B3:**

Of note, two questionable invoices for Coakley Logistics Services, LLC totaling $1,036,000.34 (TSI 2/21/20 Document 123-21 pp1-2), both had the full address for TSI, but the address for Coakley Logistics Services, LLC was missing the city on their address, on their own invoice.

The invoices were for $448,000.34 and $588,000.00; were sequentially numbered (Invoice 2125 on 12/1/2017, Invoice 2126 on 4/15/2018); only had the same single line item of description for the service provided ("Logistics services and consulting for FEMA Bottled Water relief efforts for Hurricane Maria to Puerto Rico").; and both invoices have what appears to be a digital image of a "PAID" stamp on the documents with the corresponding dates of 12/07/2017 and 4/16/2018.

The record included canceled checks from TSI in the same amounts as the invoices, check 2373 for $448,000.34 dated Dec 6, 2017 (TSI 2/21/20 Document 123-21 p1) and check 2396 for $588,000.00 on 4/13/2018 (TSI 2/21/20 Document 123-21 p19). Of note, check 2396 is dated 4/13/2018 which is before both the invoice date of 4/15/2018 and the PAID stamp date of 4/16/2018.

Also noteworthy, while both invoices were from Coakley Logistics Services, LLC, and check 2373 was written to Coakley Logistics Services, LLC, check 2396 was written to Coakley Logistics, LLC.

Given the numerous discrepancies, and since there was no contract or record of either Coakley entity, I searched and found that Coakley Logistics Services, LLC filed corporate formation documents with the State of Florida, Division of Corporations on 11/29/2017, only days before the 12/1/2017 invoice. The Florida corporate filing listed the Manager of Coakley Logistics Services, LLC as Coakley Logistics, LLC, however, there was no Florida entity of that name despite the fact that the filing listed an Orlando, FL address for Coakley Logistics, LLC, which address was the same as the Registered Agent Address for Coakley Logistics Services, LLC. Further research found Coakley Logistics, LLC listed with the Delaware Division of Corporations, which entity was

formed on 11/3/2017, just weeks before Coakley Logistics Services, LLC was formed in Florida.

A review of the Coakley Logistics Services, LLC filings with the Florida Division of Corporations found two individuals, John Canal and Alfred Gregory Canal, who signed the 2018 and 2019 Florida Annual Report filings for Coakley Logistics Services, LLC. Alfred Canal was found on LinkedIn as the CFO of Bunkers International Corp. Interestingly, to "bunker" or "bunkering" services relate to the delivery "bunkering" and storage "bunker" of marine fuels, which is TSI's other long-term line of government contracting business before the addition of the FEMA Water Supply Contract.

Further research into John Canal, Alfred Canal, and Bunkers International Corp. uncovered a Settlement Agreement regarding the bankruptcy of Bunkers International Corp., Dolphin Marine Fuels, LLC, and Atlantic Gulf Bunkering, LLC, the "Debtors", in the United States Bankruptcy Court for the Middle District of Florida, Orlando Division (Case 6:15-bk-07397-CCJ Doc 583 Filed 08/05/19), which case settlement included John Canal, Alfred Canal, as well as others including Maria Canal, Lanac Investments, LLC; Bunkers International, LLC; Americas Bunkering, LLC; Bunkers International Supply & Trading, LLC; the "Canal Defendants," collectively, the "Parties." The bankruptcy Trustee brought adversary proceedings which alleged, among other things, that the Canals breached their fiduciary duties to the Debtors, and that the Canal Defendants received preferential and constructively fraudulent transfers of assets from the Debtors.

In addition, the expense listing provided by TSI, initially on 11/19/19 (TSI 240-249), and the revised expense listing provided by TSI on 1/29/20 (TSI 448-458), both reflect an $448,000.34 expense on 12/8/2017 listed as "Transport to PR(BERING STRAITS) CLIN 0003." Since the Bering Straits expenses paid were thoroughly documented in their extensive email production, and they didn't include any mention of Coakley, nor did Bering Straits request reimbursement for any Coakley expenses, and since the TSI check 2373 for $448,000.34 dated Dec 6, 2017 (TSI 2/21/20 Document 123-21 pg1) was to Coakley Logistics Services, LLC, and not Bering Straits – this means both versions of the TSI expense listings are either (1) incorrect or (2) are in direct conflict with Coakley Invoice 2125 on 12/1/2017 for $448,000.34.

Although neither Coakley entity is present in the record in any other way, let alone through correspondence regarding a contract or work order which would support $1,036,000.34 of expenses, John Canal is in the record associated with a limited number of emails, including a Deborah Mott email to Bering Straits (Bering Straits_0000971) stating that "Also copied is John Canal, Lindsay Blee USA, TSI DLA fuels subcontractor to give some clarity on shipping prices since the bulk of the quote is for fuel." In each email instance, John Canal is a party to the correspondence on his Lisdsay-Blee email address. Further, for context, John Canal is associated with the TSI DLA (Defense Logistics Agency) fuels subcontract and fuel and bunker fuels contracts, which are TSI's other existing logistics contracts with the US Government, prior to also winning the FEMA Water Supply Contract.

Regardless of the various expense itemization conflicts, and the fact that Coakley Logistics Services, LLC incorporated as a business only 2 days before submitting an invoice for $448,000.34 of consulting and logistics services, and the irregularities with the invoices and check dates – setting aside all of these irregularities, these two one-line invoices themselves provide insufficient detail around the services provided to support $1,036,000.34 of expenses, particularly when there is no contract for service, work orders, any email correspondence, or any other documentation related to either Coakley entity presented in the record. The fact that TSI and John Canal have a business relationship on other government contracts puts this expenditure in context, and further undermines the validity of the Coakley expense claim. As such, based on the record, these invoices are both questionable and unsupportable, and in my opinion are not direct expenses under the contract. In direct contrast, there is detailed documentation, contracts, correspondence and evidence in the record to support and corroborate the $12,196,381.31 of expenses reflected on Schedule B and B1.

**Based on the available record and document production noted above, there were documents and expense listings produced by TSI which presented Unsupportable Expenses with Conflicting and/or No Detailed Record, as reflected on Schedule B4.**

TSI provided a detailed listing of the FEMA Water Supply Contract revenues and expenses initially on 11/19/19 (TSI 240-249). TSI then provided a revised detailed listing of revenue and expenses on 1/29/20 (TSI 448-458), which reflected significant changes and deletions, as well as a significant number of listed expense line items and significant dollar value of listed expenses which are not corroborated by detailed contracts for service, invoices, work orders, any email correspondence or other documentation or evidence in the record.

There are no detailed invoices or records supporting 218 line items of expenses on the TSI expense listing provided on 1/29/20 (TSI 448-458) totaling $10,530,355 of listed expenses. Further compounding the issue of these unsupported expenses, many of which only exist on the TSI expense listing and therefore have very limited or no details available, is that $1,003,802 of these claimed expenses also have conflicting details:

- 22 Ayala Colon line items totaling $4,526,140 including $334,413 of conflicts
  - Of these 22 expense listing line items provided by TSI, only 2 line items stating "Ayala CLIN 0016" dated 7/03/2018 had any related records, however the records were conflicting for both – notably a TSI check to Bering Straits for $193,613 (TSI 000258) and a TSI check to Bering Straits for $140,800 (TSI 000256)
  - $81,360 of new Ayala invoices were produced in May 2020, however, these did not correspond to any of these 22 Ayala line items on the TSI expense listing.
  - For context, the record does show that TSI does business with Ayala under their DLA fuels and fuel bunkering contracts. Regardless, these TSI listed expenses are unsupportable and are not substantiated in the record as costs incurred under the FEMA Water Contract.
- 39 DART line items totaling $2,144,238, with $112,887 of conflicts.
  - There were no detailed records supporting any DART expense listings.

- 118 TRBR line items totaling $1,342,436, with $61,001 of conflicts.
    - Of note, $431,775 of new Trailer Bridge invoices produced in May 2020 were substantiated contract costs, however, only $233,451 of matching line items were found in the TSI expense listing, while $198,324 of invoices were not.
- 2 Coakley line items totaling $1,036,000 with $448,000 of conflicts
- 4 Tesza line items totaling $944,553
    - There were no detailed records supporting any Tesza expense listings.
- 33 Direct Labor line items totaling $536,986 including $14,500 of conflicts and $33,000 of conflicts incorrect expense allocations.
    - A document intended to support 1 line item of the 33 Direct Labor expenses line items was a TSI check to TSI officer Christopher Mott for $33,000 on 1/10/18 (TSI 2/21/20 Document 123-21, p11). However, this is incorrectly allocated as an officer and member of management would be considered overhead or indirect costs, not direct labor, as outlined in paragraph 340-40-25-7 of the FASB Accounting Standards Codification. Further, a new Trailer Bridge invoice for $14,500 produced in May 2020 is in conflict with the TSI line item which listed this as "Logisitcs DIRECT labor CLIN 0016."

Both the detailed expense listing provided by TSI, initially on 11/19/19 (TSI 240-249), and the revised detailed expense listing provided by TSI on 1/29/20 (TSI 448-458), included significant expenses that were unsubstantiated and conflicting, many expenses that were double-counted, and there were substantial contract revenues omitted.

The initial FEMA Water Supply Contract detailed expense listing provided by TSI on 11/19/19 (TSI 240-249) presented expenses that looked irregular. It is highly unusual that all expenses for any business or project, in my experience, are of the same expense category for months, then change to only another category for months, and so on, as opposed to various expense categories being interspersed throughout time.

In this case, the only listed expenses were "LOGISTICS" from 4/24/18 to 9/11/18, then only "TRANSPORTATION/ OPERATIONS" from 9/13/18 to 10/15/18, then only "LOGISTICS" again from 10/15/18 to 12/3/18, then only "TRANSPORTATION/ OPERATIONS" from 12/3/18 to 2/5/19, and only "LOGISTICS - STAFF" from 2/6/18 to 3/20/19, and finally, only "TRANSPORTATION/ OPERATIONS" from 3/21/19 to 10/29/19. Within this unusual conformity of expense items listed, there were $13,471,917 of claimed expenses that were unsubstantiated, unsupportable expenses and not corroborated by detailed contracts for service, invoices, work orders, any email correspondence or other documentation or evidence in the record.

Of note, in this initial detailed expense listing, TSI represented that the "Total Amount Received to Date by TSI from FEMA Under MATOC" Water Contract was $27,303,597 of revenues, with the list of expenses TSI provided totaling $27,046,485, which would leave $257,112 of profit, according to TSI. However, $13,471,917 of claimed expenses listed and presented by TSI are unsubstantiated and unsupportable. Further, TSI omitted $10,275,951 of FEMA revenue received under the contract.

The questions raised by the unsubstantiated nature of the initial detailed expense listing provided by TSI on 11/19/19 (TSI 240-249) persist with the revised detailed expense listing provided by TSI on 1/29/20 (TSI 448-458), which revised or eliminated 62 of 306 line items, thus changing 20.3% of the detailed expense line items. Of these, 43 claimed expense line items totaling $2,114,015 were simply eliminated, while 19 of these claimed expense line items totaling $547,744 were revised. In total, the 62 line items that were changed or eliminated represented a $2,661,759 reduction in TSI's detailed listed expenses. Under the initial TSI expense listing, unsubstantiated claimed expenses totaled $13,392,940, of which $2,661,759 were revised or eliminated, leaving $10,731,181 of unsubstantiated claimed expenses under the revised expense listing provided by TSI. The May 2020 document production included invoices which reduced the unsubstantiated expenses in the revised TSI expense listing to $10,530,355.

The initial TSI expense listing also reflected numerous double-counted expense items totaling $426,302 of claimed expenses across 10 duplicative line items. However, in the revised expense listing TSI removed 5 lines and $148,057 of the double-counted claimed expenses, although the remaining 5 duplicative line items were still double counted – except that the duplicates were each reduced by 64% for an unknown reason, which is unusual and did not have support in the record.

In addition to the above double-counted expenses, TSI initially double-counted $675,767 of claimed expenses across 13 other duplicative line items, except that the duplicates of these line items were each reduced by 5% for an unknown reason. However, these 13 duplicative line items were still double counted in the revised expense listing, except that the duplicates were each now reduced by 64% for an unknown reason, which is unusual and did not have support in the record.

To support the expense listings provided by TSI, there are only detailed contracts for service, invoices, work orders, any email correspondence or other documentation or evidence in the record to support 10 of the 306 line items of the initial TSI expense listing, then only 10 of the 263 line items of the revised expense listing which eliminated 43 line items. With the additional Trailer Bridge invoices that correspond to the 12 line items from the May documents, 22 line items have relevant records related to them – and 2 of these are the questionable Coakley Logistics Services, LLC invoices.

Of note, in this revised expense listing, TSI represented the "Total Amount Received to Date by TSI from FEMA Under MATOC" Water Contract was still only $27,303,597 of revenues, with the list of claimed expenses TSI provided now revised and totaling $24,384,727, leaving $2,918,871 of profit, according to TSI. However, substantial expenses TSI presented in the revised expense listing remained unsubstantiated and unsupportable. Further, TSI still omitted $10,275,951 of FEMA revenue received under the FEMA Water Contract, based on multiple records produced by FEMA detailing total amounts paid to TSI under the contract. TSI has subsequently produced records and FEMA documents detailing that the revenues received under the contract were, in fact, $37,579,548.

**Based on the available record and document production reviewed and noted above, there were documents listed below which support the analysis of Total Extrapolated Additional PR and Shipping Container Expenses with Limited and/or No Detailed Record, which totaled $371,380 as shown on Schedule B5:**

- Bering Straits 00006682
- TSI 000421
- D021655-21657
- D021896-21897
- D021649
- D021825-21828
- D021645
- D021641-21642
- D021631-21638
- D021619-21622
- D021944-21947
- D021596-21597
- TSI 2/21/20 Document 123-2, pp1-6
- D021671-21674
- D021782-21789
- D021667-21668
- D021732-21733
- D021872-21877
- D021659-21660
- D021813-21814
- D021792-21793
- D021809-21810
- D021592-21593
- D021940-21942
- D021795
- D021722
- D021720
- D021721

From the record, FEMA paid TSI $175 per day for each of the 695 shipping containers while FEMA maintained possession of them in Puerto Rico from November 2017 through August of 2018. Once FEMA relinquished possession, TSI was then able to stage the return of the shipping containers to Jacksonville, Florida from San Juan, Puerto Rico. To this end, the record, as of May 2020, now includes 26 receipts from Trailer Bridge, Inc. for the return of 551 empty shipping containers at a freight charge of $725 per container. Since there were no other records on this issue, the $725 freight charge per container was used to extrapolate the costs to return the remaining 144 shipping containers to Jacksonville, which total is $104,400.

Additional extrapolated expenses also include the unloading of the containers in Jacksonville, Florida. The original loading work there was handled by Tote Marine, who

originally inspected and loaded 480 of the 695 containers, which invoiced work totaled $144,568 (Bering Straits_00006684). Based on the derived cost per container to originally load in Jacksonville, this same cost per container was used to extrapolate the expense to unload the 695 empty containers in Jacksonville, Florida, which totaled $266,980.

As shown on Schedule B5, The Total Extrapolated Additional PR and Shipping Container Expenses with Limited and/or No Detailed Record were $371,380.

**C. Documents supporting the analysis of Total Net Income as Defined by Parties' Agreement, Net Income Profit Sharing among TSI and Plaintiffs, Amounts Paid to Plaintiffs, and the resulting Net Income Profit Sharing Amounts Due to Plaintiffs detailed on Schedule C:**

- TSI 150-152
- TSI 67-68

The complete analysis, based on the significant document production reviewed and relied on, as specified herein above, supports and concludes that TOTAL FEMA Water Contract Gross Revenues Paid to TSI (Schedules A and A1) of $37,579,548, were reduced by TOTAL Supported Contract Cost of Goods and Direct Expenses (Schedules B and B1) incurred under the contract and paid by TSI of $12,196,381, combined with TOTAL Extrapolated Expenses with Limited and/or No Detailed Record (Schedule B5) of $371,380, resulted in TOTAL Net Income as Defined by Parties' Agreement (Schedule C) of $25,011,787.

As per the agreement between TSI and the Plaintiffs, the profits or TOTAL Net Income of $25,011,787 was to be split among the parties, with TSI profit sharing at 75%, corresponding to $18,758,840, and 25% profit sharing for Plaintiffs totaling $6,252,947, which allocation is shown below:

| | | |
|---|---|---|
| TSI Net Income Profit Sharing | 75.00% | $18,758,840 |
| Plaintiffs' Net Income Profit Sharing | 25.00% | $ 6,252,947 |
| | 100.00% | $25,011,787 |

Given that, to date, the Amounts TSI has Paid to Plaintiffs totals only $998,370, the outstanding Net Income Profit Sharing Amounts Due to Plaintiffs (Schedule C) is $5,254,577.

**Qualifications and biography for Ryan Jon Orner, are summarized below and further detailed in the resume attached as an exhibit.**

    Ryan Jon Orner, President of RJOrner & Company, LLC, has nearly 25 years of experience in banking and finance, and has served in multiple roles in investment banking, private capital investing, as a strategic advisor to middle market companies, and as an adjunct professor of finance.

    Mr. Orner joined GlobalView in 2017 to help lead the firm's private capital investment business, participating in all aspects of the investment process, from business development, to structuring and executing transactions, to operations and portfolio management.

    Prior to this, Mr. Orner was the Founding Partner and Managing Director of Alta Mergers & Acquisitions Partners, LLC a middle market boutique investment banking firm focused exclusively on M&A originations and related M&A transaction advisory.

    Mr. Orner spent the majority of his investment banking career with Merrill Lynch & Co., within the Global Markets & Investment Banking umbrella, split between the Financial Sponsors Group and Merrill Lynch Capital. Prior to Merrill Lynch, Mr. Orner held positions with CIBC World Markets Corp. and SunTrust Banks, Inc.

    Through these roles covering both middle market and large market private equity sponsors, Mr. Orner successfully completed 25 leveraged buy-out and recapitalization transactions representing over $12.0 billion in enterprise value, $7.0 billion of leveraged loan and high-yield debt financings, and more than $1.0 billion of initial public offering equity transactions.

    After leaving Merrill Lynch in 2009, Mr. Orner spent nearly five years successfully leading the Targeted Search activities of Chestnut Hill Partners, LLC, a boutique middle market investment bank focused on mergers & acquisitions originations. Mr. Orner subsequently founded Alta M&A Partners to continue working across the Targeted Search and M&A originations market. As Managing Director, he originated ten highly strategic middle market M&A transactions across multiple private equity sponsors and numerous Targeted Search engagements.

    Mr. Orner received a Bachelor of Science (B.S.) in Finance and Political Science from Florida State University in 1995, where he served as Student Body President, where he exercised executive responsibility and signature authority over a $5 million budget, and represented the 30,000 students of FSU before the state and local governments, and managed and held oversight responsibility for more than 300 full-time and part-time administrative staff.

    Mr. Orner went on to earn a Master of Business Administration (M.B.A.), with an emphasis in finance, from the McDonough School of Business at Georgetown University in 2002.

In addition to his full-time work in banking and financial consulting, since 2014 Mr. Orner has enjoyed giving back to his alma mater and helping train the next generation of bankers as an Adjunct Professor of Finance at Florida State University, where he teaches the Investment Banking class offered as core curriculum of the Master of Science in Finance Program

Through his undergraduate and graduate studies in business and finance, Mr. Orner took a variety of accounting and financial statement analysis courses including financial accounting, managerial accounting, cost accounting, analysis of financial statement presentation.

In addition, as part of the bank training programs at SunTrust, CIBC, and Merrill Lynch, Mr. Orner also received focused accounting, corporate finance, and financial modeling training over the years, which knowledge has been integral to his career in banking – over which time he has consistently had the opportunity and responsibility to prepare and/or review both internal company-prepared and accountant-prepared financial statements; dynamic financial models, forecasts, and valuations; accounting due diligence and quality of earnings reports; as well as a variety of SEC filings.

**As compensation for the study and testimony in this case, Ryan Jon Orner, will receive the following:**

Fees for services at the rate of $150.00 per hour for all expert witness services, including but not limited to document review and analysis, calculations, conclusions, preparation of reports, and necessary travel time, except that fees for testimony at deposition or trial will be paid at the rate of $300.00 per hour.