UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

GPDEV, LLC AND SIMONS
EXPLORATION, INC.,

    Plaintiffs,                               CASE NO.: 4:18-cv-00442-RH-CAS

v.

TEAM SYSTEMS INTERNATIONAL,
LLC,

    Defendant.
_____/

**PLAINTIFFS' BRIEFING ON DROP TRAILER DELIVERY
AS PART OF FEMA CONTRACT TO DETERMINE
25% NET PROFIT ENTITLEMENT**

Because Plaintiffs procured Niagara (and Nestle) as the bottled water supplier(s) to enable Defendant TSI to qualify for and perform FEMA's contract for emergency supply of bottled water (the MATOC and Puerto Rico delivery order thereunder), Plaintiffs are entitled to 25% of the profits that TSI realized from the contract. This includes revenues and expenses related to drop trailer delivery of the bottled water supplied in Puerto Rico as required under the contract.

Plaintiffs' Consulting Agreement with TSI, under date of August 16, 2017, recites that, in recognition of Plaintiffs' assistance in procuring the supply of bottled water from Niagara Bottling Co. to sell to FEMA, TSI agrees to pay a total success fee of 25% of the net amount of income that TSI actually receives from amounts

1

invoiced and paid by FEMA.  Net revenue is defined as Gross Revenue (received under the Contract) less Cost of Goods Sold+Transportation+Direct Labor Expenses.  (Dkt. #96-2, recitals).

The Consulting Agreement specifically provides that TSI will pay Plaintiffs 25% of the Net Income TSI actually realized from amounts paid by FEMA or other federal agencies with respect to contracts made by TSI for the supply of bottled water through Niagara.  (Dkt. #96-2, ¶ 1).

The Consulting Agreement is stated to be with respect to any contracts (for) which TSI <u>uses</u> the supply of bottled water through Niagara.  (Dkt. #96-2, ¶ 2).

The Consulting Agreement was subsequently modified to include Nestle bottled water after Plaintiffs procured Nestle as additional bottled water supplier.  See Court's Order Denying Summary Judgment, Dkt. #103, pp. 3-4 (jury could find the contract was modified to apply not only to water supplied through Niagara but also water supplied through Nestle and perhaps others brought on board by Plaintiffs.).  See also Dkt. #98, pp. 20-26; Dkt. #100, pp. 1-2.

Under its emergency bottled water supply contract with FEMA, TSI was required to make delivery of bottled water by shipment to Puerto Rico in trailer containers dropped and used by FEMA for a period of time (allowing FEMA's temporary storage and unloading of the containers when and where the bottled water would be distributed by the Puerto Rico government).  FEMA paid for its use of the

trailers containing the delivered water on per diem basis, until the bottled water was unloaded. The trailers were then returned for pick up by TSI, and TSI transported the rented empty trailers back to their owner, paying the cost of their return transportation and their rental fees.

As Plaintiffs are entitled to 25% net profits from the MATOC Delivery Order to supply bottled water (that Plaintiffs procured) in response to Hurricane Maria, Plaintiffs are necessarily entitled to receive net profits from performance of all contract requirements to supply such water, including drop trailer delivery. See Dkt. #89-3, p. 101 (Mr. Simon testifying that storage drop trailers go on for a long period of time before Plaintiffs could get their money); and Dkt. #89-2, p. 57 (Mr. Peterson testifying the cost of transportation in the FEMA bid typically includes drop trailer charges). Just as delivery shipment of bottled water from Jacksonville to Puerto Rico is a contract line item distinct from delivery of water to Jacksonville, so too drop trailer delivery under another line item requirement must be accounted for to determine Plaintiffs' net profit entitlement. See Dkt. #89-20, p. 6, e-mail of November 30, 2017, whereby Ms. Mott of TSI, in remitting profit realized to date for net revenue of water transported to JAX, indicates that FEMA put the transport costs to Puerto Rico in another CLIN and added the requirements for containers.

At minimum, the issue is for the jury to determine. Certainly, Defendant is not entitled to exclude such profits as a matter of law.

## Supporting Record Facts

Facts pertinent to this issue are presented by Plaintiffs' Response to Defendant's Motion for Summary Judgment (Dkt. #98), at pages 2-7 and 12-16, with supporting record citations. These matters are incorporated herein by reference to avoid needless replication.

By his deposition testimony (Dkt. #202), Mr. Mark St. Moritz, Defendant's expert on government contract regulations, explains as follows regarding the FEMA contract in this case (deposition page(s) referenced after the indicated testimony):

- TSI was awarded a MATOC by FEMA, being a multiple award task order contract, allowing FEMA to issue one contract to multiple companies for the same product to be competed (awarded) among those companies. (pp. 6-7). There is one solicitation for the MATOC for response by multiple contractors who can receive a contract if accepted. (p. 21).

- TSI was awarded an indefinite delivery, indefinite quantity contract to provide bottled water delivery during different disasters, with multiple CLINs for various items needed. (pp. 7-8). An indefinite delivery contract says FEMA knows there is a need coming, without knowing how much or when or how, but want to be ready. (p. 23).

- Pursuant to the MATOC, there was a Task Order (delivery order contract) for bottled water going to Puerto Rico for emergency there. A CLINs is one of the items of work to be done within the task order statement. (pp. 9-10).

- CLIN means contact line item, being statement of the itemization of the work. (p. 27).

- A delivery order is a separate stand-alone contract under the MATOC with all the terms and conditions of the MATOC. (pp. 24-25). FEMA

issued a delivery order under TSI's MATOC for Puerto Rico shipment of bottled water. (p. 27).

- FEMA's RFP solicitation for the MATOC listed the contract CLINs, provided a statement of the work, and sought the proposer's pricing for the work (reflected by the CLINs). The RFP provided a listing and informed of all the different CLINs and the quantities and things that were or may be required. (pp. 11-12).

- The drop trailer CLIN was described by the Statement of the Work to be that the contractor might be required to drop trailer for upwards of 30 days or more, billed at a flat rate per day based on actual drop days, with trailer pickup at which point daily rate will stop accruing. (pp. 12-13).

- Drop trailer means to drop the trailer off with FEMA when there is delivery of the bottled water loaded on the trailer container, and FEMA keeps the trailer and returns it back (empty) at some point and pays for the time was held at a flat rate; this being described in the RFP as something that might be required as part of the contract. (pp 13-14).

- As part of FEMA's evaluation of TSI as a MATOC offeror to get a contract award, TSI had described its experience and capability to handle the matters set forth in the CLIN itemizations and statement of the work, including whether TSI offerred to drop trailers for a minimum of 30 days at a disaster site during emergency response. (pp. 16-17). TSI also had to provide unit price schedules for each CLIN item part of its proposal, for FEMA's evaluation and utilization in a delivery order award. (p. 17).

- Drop trailer is part of the price schedule that TSI submitted in response to the RFP, and TSI could not receive an award without doing so. (p. 18). TSI filled out and submitted a price schedule to FEMA that would have included drop trailer as one of its required items. (p. 19).

- The RFP price schedule remitted by TSI lists the price for CLIN 3 drop trailer price for the base year and each option year of the contract. (p. 20).

- The price schedule provided by TSI in response to the RFP is attached to the MATOC (indefinite delivery, indefinite quantity contract), to

5

provide how much will be paid for the particular work that could be included. (pp. 28-29). Any of the CLIN itemized numbered work could be required at any time. (p. 29- 30).

- FEMA included the drop trailer work for Puerto Rico water supply delivery by contract (delivery order) modification to include that work at the drop container fee listed in the price schedule that TSI had remitted with its RFP response. (p. 32).

- The modification was within the scope of the delivery order contract, being an addition, not a change order or something new. (p. 33). Because the MATOC is for indefinite delivery, indefinite quantities, whatever changes are desired within the scope of the contract can be made, so FEMA can direct drop trailer delivery even if not originally contemplated when the delivery order was made. (p. 34).

- The modification added the CLIN for drop trailers as billable work as part of TSI's delivery order under the MATOC for bottled water to Puerto Rico.

The record in this case further establishes that:

Drop Trailer (CLIN X003AA-itemized work statement) was plainly described as a contract requirement that might be required of a MATOC contractor. (Dkt. #89-13, p. 18).

On June 6, 2017, TSI submitted its proposal to FEMA for MATOC award, including its technical compliance statement and pricing proposal. The submitted letter stated that TSI, Niagara Water Company, Bearing Straights Logistics, and Navajo Express Inc., "have formed a contractor team pursuant to (designated federal procurement regulations) and are pleased to provide our collective, highly relevant capabilities and experience for evaluation...." (Dkt. #89-12, p. 2).

TSI's response price schedule for the work (redacted by TSI as to amounts submitted), corresponding to the description of work column, indicates a per-day drop trailer rate for CLIN # 0003AA under Transportation section for the base contract year, and same for contract option years 1-4, being denominated as CLIN numbers 1003AA, 2003AA, 3003AA, and 4003AA. (Dkt. #89-5, pp. 2-4).

On August 4, 2017, Plaintiffs proposed "a simple agreement" to compensate their assistance in procuring bottled water to be supplied if TSI were successful in securing and performing the FEMA bottled water supply contract. (Dkt. #89-15, p. 2). The proposal was for a "Commission Agreement" for 25% of the gross amount of income TSI actually receives from amounts invoiced and paid by (FEMA) with respect to contracts to supply of bottled water to FEMA through Niagara. (Dkt. #89-15, p. 4).

On August 15, 2017, Ms. Mott on behalf of TSI returned an "edited version" of the agreement, designating it "Consulting Agreement," and commenting that the agreement "detailed a success consulting fee of 25% of Net Income for arranging a supply of bottled water from Niagara." (Dkt. #89-17, p. 2). In transmitting her edited version of the agreement, Ms. Mott commented that "all parties can view the task orders ...that are what they are when awarded. No way to predict them. I will not agree to an audit...All parties can view the source of income and the source of

all deductions to income. Simple. And venue is in Florida...." (Dkt. #89-17, p. 2). Plaintiffs accepted Ms. Mott's changes. (Dkt. #89-16).

On September 6, 2017, FEMA issued TSI its "indefinite delivery, indefinite quantity Contract (MATOC) to provide Bottled Water delivery during a Declared Disaster." (Dkt. #96-23, p. 1). The contract stated that the Government will utilize the contract "to respond to disasters...to perform services in the specific states and/or the affected areas." And that contractor in disaster situations should expect to meet increased contract amounts. (*Id*. pp. 1-2). The Price Schedule for each CLIN and CLIN unit price was incorporated into the contract, and reference was made that specific delivery location information will vary per Task Order. (*Id*. p. 2). The period of performance was 9/5/17 to 9/4/22 (*Id*.), and all the CLIN number items of work, including the drop trailer number and description, were scheduled as part of the contract. (*Id*. pp 3-14).

On September 28, 2017, FEMA issued Delivery Order (0273) to TSI under the Bottled Water MATOC for bottled water delivery to Puerto Rico port in response to Hurricane Maria. (Dkt. #96-24).

On October 6, 2017, FEMA emailed Ms. Mott at TSI that "We need to make sure all your water is on a trailer or container? Please confirm." Ms. Mott responded, No drop trailer CLIN in our award." Ms. Mott indicated that drop container rate

8

needed to be added to our DO (delivery order). FEMA responded, "we will use the drop trailer rate in your contract." (Dkt. #203-1, FEMA 174-175).

On October 9, 2017, FEMA again advised Mr. Mott that TSI "will need to add the drop trailer rate to your delivery order, since this will require drop containers;" and on October 12, 2017, FEMA advised, please send your updated schedule and your rent amount on the drop containers so we can prepare your modification to your Task Order." (Dkt. #203-2, FEMA 181).

On October 22, 2017, Ms. Mott advised FEMA when the charter departures of water were scheduled to depart to Puerto Rico, as reported that "All water in platted containers," and that "Drop container charge begins at SJ PR port for FEMA daily use." (Dkt. #203-3, FEMA 183). On October 30, 2017, TSI advised FEMA that barges with containers divided between Nestle water and Niagara water were loaded and in transit to Puerto Rico. (Dkt. #203-4, FEMA 122).

On November 2, 2017, Ms. Mott (TSI) inquired of FEMA, "Please advise of the status of the container MOD to include the drop trailer fee." (Dkt. #96-27). On November 6, 2017, FEMA issued MOD 01 for the Delivery Order under the MATOC agreement, to "add CLIN 0002 Drop Trailer ...at $175/container/day rate for each container dropped and in possession of FEMA. ***The contractor shall be responsible for each container starting from the date notified by FEMA for pickup. NTE containers eligible for the CLIN is 695 containers." (Dkt. #96-28).

9

**Plaintiffs Should Receive 25% of Net Profits Realized from
Drop Trailer Container Delivery of Bottled Water Supplied through
Niagara and Nestle to Puerto Rico under TSI's MATOC**

Drop Trailer delivery requirement is part of the FEMA contract for which Plaintiffs should receive 25% of net profits realized by TSI. See legal analysis provided by Plaintiffs' Response in Opposition to Defendant's Motion for Summary Judgment, Dkt. #98, pp. 27-30, incorporated herein by reference.

Drop Trailer container delivery of bottled water is a stated part of Transportation under the MATOC, being an itemized statement of anticipated work. It was explained from the outset to be part of the work that was or could be directed within the scope of the contract for TSI to supply bottled water on an emergency basis to a disaster area.

Added work within the scope of the contract is part of the FEMA bottled water supply contract. *See* 11 Fla. Jur. 2d *Contracts* § 211-12. Plaintiffs are entitled to profits realized from performance of the contract, including requirements for delivery of the water being supplied that is directed under the contract.

Fulfilling FEMA's delivery order contract to supply bottled water to Puerto Rico occurs when all contract requirements are met. This includes the requirement for drop trailer delivery that was explained and priced from the start, and directed before Nestle and Niagara bottled water was transported to Puerto Rico.

Thus, net profits with respect to TSI's contract for the supply of bottled water from suppliers procured by Plaintiffs, necessarily includes profits from transportation and delivery requirements of the bottled water being supplied.

Furthermore, supply of bottled water is not complete, and hence sale does not occur, until the water is delivered to FEMA by drop trailer delivery required under the contract. Delivery of supplied water does not occur until the dropped trailer containers to facilitate FEMA's temporary storage, use and distribution of the supplied bottled water, are unloaded and returned to TSI. Per the federal government's own analysis, delivery occurs when FEMA off-loads the dropped trailers and transfers the containers of bottled water from them to the Puerto Rican government. (Dkt. #205-2, DHS OIG Report, p. 2, Commodity Distribution Process chart – when FEMA moves the containers to its staging area and takes them to the Puerto Rico government's regional staging area and prepares them of point of distribution, "FEMA considers commodities delivered and the responsibility of the Puerto Rico government at this point.").

Ms. Mott for TSI, upon entering the Consulting Agreement, may have envisioned MATOC task orders would be for bottled water supplied domestically, and not have envisioned the actual order given for bottled water supplied by shipment to Puerto Rico requiring drop trailer container delivery. But this does not determine whether the Consulting Agreement applies for profits realized with

11

respect to the Puerto Rico delivery contract that in fact was performed. Contracts may include matters or apply to situations that party did not envision. *See*, *e.g.*, *Beach Resort Hotel Corp. v. Weidner*, 79 So.2d 659 (Fla. 1955) (court cannot reconstruct contract for purpose of making its terms accord with post-contractual conception more suitable to the situation of a parties, or to relieve one of the parties from hardship of an improvident bargain).[1]

The point is that whatever the FEMA contract required for supply of bottled water, the Consulting Agreement required that Plaintiffs receive 25% of the net profits realized for procuring the bottled water to be supplied.

Profit sharing per CLIN item requirements was not provided for by the Consulting Agreement, and cannot now be invented as the standard to measure Plaintiffs' 25% net profit entitlement. *See Shoma Coral Gables LLC v. Gables Investment Holdings, LLC*, 2020 WL 4199056 *5 (Fla. 3d DCA July 22, 2020) (contract means not what a party may intend, but what reasonable person in position of the parties would have thought it meant).

---

[1] If the expenses of performing FEMA's Puerto Rico drop trailer delivery order outside of the United States had exceeded the revenue paid by FEMA, no doubt Ms. Mott would assert that Plaintiffs had no entitlement under the Consulting Agreement to profits from TSI's performance of the contract line item for water delivered to the domestic staging area.

## Conclusion

The issue briefed herein should be resolved in Plaintiffs' favor.

Respectfully submitted this 14th day of October 2020.

                    *s/ M. Stephen Turner*
                    M. Stephen Turner, Esq.
                    Florida Bar No.: 095691
                    M. STEPHEN TURNER, P.A.
                    Post Office Box 10261
                    Tallahassee, FL 32302
                    Tel: 850.545.1061
                    mstephenturner.pa@gmail.com

                    and

                    Leonard M. Collins, Esq.
                    Florida Bar No.: 423210
                    GRAYROBINSON, P.A.
                    301 S. Bronough Street, Ste. 600
                    Tallahassee, FL 32303
                    Tel: 850.577.9090
                    leonard.collins@gray-robinson.com
                    madison.harrell@gray-robinson.com

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

In accordance with Local Rule 7.1(F), the Plaintiffs certify that this memorandum contains 3,201 words. The count was done using word count on Microsoft Word and excluding the case style, signature block, and certificate of compliance and service.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been furnished via electronic mail with the Clerk of the Court for the Northern District through the CM/ECF system and served on all counsel of record as listed below this 14th day of October, 2020.


Randall L. Leshin
Randall L. Leshin, P.A.
1975 East Sunrise Blvd., Suite 504
Ft. Lauderdale, FL 33304
rleshin@leshinlawfirm.com
email@leshinlawfirm.com


Wayne LaRue Smith
The Smith Law Firm
509 Whitehead St.
Key West, FL 33040
wsmith@thesmithlawfirm.com
court-filings@thesmithlawfirm.com


                                        *s/ M. Stephen Turner*
                                        M. Stephen Turner