## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

GPDEV, LLC AND SIMONS
EXPLORATION, INC.,

        Plaintiffs,                CASE NO. 4:18-cv-00442-RH-CAS

v.

TEAM SYSTEMS INTERNATIONAL,
LLC,

        Defendant.

_____/

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

      Plaintiffs, GPDEV, LLC AND SIMONS EXPLORATION, INC., (hereinafter "GPDEV" and/or "Simons" or collectively Plaintiffs),  pursuant to Fed. R. Civ. P. 56, respond to   Defendant's. TEAM SYSTEMS INTERNATIONAL, LLC (hereinafter "TSI") Motion for Summary Judgment (DKT. 209) and respectfully shows the Court the following in support:

### Plaintiffs' Statement of Disputed Facts.

      In response to this Court's Order (DKT. 201), Plaintiffs filed their Motion for Partial Summary Judgment on Affirmative Defenses 5 and 6 (DKT. 207) and Plaintiffs' briefing on drop trailer delivery as part of FEMA Contract to determine 25% net profit entitlement (DKT. 206). Plaintiffs reincorporate the arguments and

statement of facts (DKT. 206 and 207) in those filings by reference to avoid needless replication.

## I.    FEMA SOLICITATION AND STATEMENT OF WORK

FEMA released its RFP and statement of work on June 9, 2017. The RFP required any response to include a Pricing Proposal, a Technical Proposal and a Past Performance Proposal. (DKT. 89-4 at 52.).

Drop Trailer (CLIN X003AA-itemized work statement) delivery of bottled water was plainly described as a contract requirement that might be required of a MATOC contractor. (DKT. 89-13, p. 18). There were various transportation options sought by the RFP and each bidder was required to demonstrate the capacity to provide the service and to provide pricing for the various potential transportation services that may be sought for delivery of bottled water. (See line items 1003AA, 2003AA, 3003AA, and 4003AA in DKT. 89-5, pp. 2-4).

The Statement of Work provides:

> During an emergency response, the Contractor shall also have the capability to provide various transportation options: **Be ready for other water delivery situations that may arise during an event, and be adaptable enough to accommodate any other requests from the CO/COR, within reason.** (e.s.). See, DKT. 89-7, pp. 3-4.
>
> Drop Trailer (CLIN X003AA) - Contractor might be required to drop trailer for an upwards to 30 days or more. They will be billed at flat rate per day, based on actual drop days. The contractor will be contacted for trailer pickup at

which point daily rate will stop accruing. DKT. 89-7, pp. 4.

The Statement of Work provides under item a. entitled "Deliverables", 2. Disaster Emergency Response/ Surge Operations, bullet point 1 states:

> During an emergency response operation, FEMA requires the Contractor to have the capability to provide up to 900,000 liters (50TL) per day within 24 hours of Authorization To Proceed (ATP), with not-to-exceed 2,700,000 liters (150TL) total delivery by Day 3 (within 72 hours of ATP);

Bullet point 3 states:

> During an emergency response, the Contractor shall deliver bottled drinking water to the event site anywhere in the contiguous United States **and drop the trailers**. All emergency response delivery orders shall be dropped at the ISB, SA or alternative location as negotiated by the CO. **The trailers may remain in the Government's possession as long as 30 days or greater**. (e.s.).

Bullet point 5 states:

> Note – Proposed Locations: Contractor should be able to support the following geographical areas.
>
> All CONUS/ outside contiguous United States (OCONUS);

TSI's response price schedule for the work (redacted by TSI as to amounts submitted), corresponding to the description of work column, indicates a per-day drop trailer rate for CLIN # 0003AA under Transportation section for the base contract year, and same for contract option years 1-4, being denominated as CLIN #s 1003AA, 2003AA, 3003AA, and 4003AA.  (DKT. 89-5, pp. 2-4).

3

TSI needed a large bottled water company to be able to show that it could comply to FEMA's requirements for the MATOC. Without Plaintiffs' introduction to Niagara Water, at a very late date--- June 30, 2017 and Plaintiffs' relationship with Niagara, TSI would never have been able to submit a successful bid on July 6, 2017.

In Defendant's first Summary Judgment motion, its statement of undisputed facts states: Mr. Peterson facilitated an introduction to Niagara, and discussions about the RFP and how Niagara might be able to help TSI meet FEMA's requirements ensued. (See, DKT. 89, pp. 4).

Defendant's pending summary judgment motion states: On July 6, 2017, TSI formally responded to the RFP. TSI listed itself, Niagara Bottling, Navajo Express (trucking), and Bering Straits as contracting team partners (DKT. 209, pp. 6).

## II.   CONSULTING AGREEMENT

The Consulting Agreement (executed on August 17, 2017) has no term that states that Plaintiffs will ensure the supply of bottled water from Niagara. The Consulting Agreement recitals provides (DKT. 96-2):

> WHEREAS TSI has procured with the assistance of GEP and AI a supply of bottled water supplied by Niagara Bottling, LLC, to sell to the US Department of Homeland Security, Federal Emergency Management Agency, and other agencies;

> WHEREAS, TSI has agreed to pay GEP and AI a fee for their assistance in procuring the above referenced supply of bottled water, and;
>
> WHEREAS, by this agreement, TSI agrees to pay GEP and AI a total success fee of twenty-five percent of the net amount of income TSI actually receives from amounts invoiced to and paid by said agencies and or customers. Net income is defined as Gross Revenue less (Cost of Goods Sold + Transportation + Direct labor expenses).

Paragraph 1 of the Consulting Agreement provides in pertinent part:

> TSI agrees to pay GEP and AI a commission of twenty-five percent (25%) of the net income TSI actually realizes from amounts paid by the government agencies referenced in the Recitals including any other government agencies or customers with respect to subsequent contracts made by TSI for the supply of bottled water through Niagara Bottling, LLC. All of the parties to this agreement have the right to view upon demand the Prime Contract Task Order Awards, invoices from Navajo and any other direct expense receipts applied to reduce net income…

The Consulting Agreement (as written) provided compensation to Plaintiffs based on, "a total success fee of twenty-five percent of the net amount of income TSI actually receives from amounts invoiced to and paid by said agencies and or customers."

## III.   INITIAL TASK ORDER CANCELLED BY FEMA.

Defendant argues it was unable to submit a quote for an initial task order opportunity because Niagara did not have water ready to sell within 3 and a half hours of its request for 48 million liters of bottled water. (See DKT. 205-3--- FEMA September 6, 2017, 4:22 am, email request for quote for 48 million liters of bottled

5

water by 8 am on September 6, 2017).  However, this is refuted by paragraphs 5-13 of Plaintiffs' Summary Judgment Motion (DKT. 207).  The record shows that Niagara told TSI upon its introduction to TSI that inventory of bottled water was based on availability and production capacity; additionally, TSI was not set up to purchase large quantities of water within the Niagara system when the initial task order was suddenly issued immediately after the TSI was advised that its bid for the MATOC was accepted by FEMA and TSI was not in a position to purchase water using credit, See DKT. 205-1 (Chris Mott's Notice that FEMA accepted TSI's bid and Niagara's request for TSI to fill out a credit application); See also DKT. 205-4 (Plaintiffs request for information regarding Niagara water supply); DKT 205-5 (Niagara's notice that it is in an oversold situation at that moment and subsequent email asking once again the TSI fill out a credit application).  Furthermore, FEMA's September 6, 2017 request was ultimately abandoned as acknowledged by Ms. Mott. See,  DKT 205-5 and DKT. 205-7.

## IV.   NIAGARA WAS ABLE TO SUPPLY AS MUCH WATER AS WAS NEEDED.

There is no evidence that supports any assertion that Niagara was unable to support FEMA's request for bottled water. Paragraphs 14-27 of Plaintiffs' Motion for Summary Judgment (DKT. 206) directly refute this claim[1].   Niagara's

---

[1] See DKT. 205-9, DKT. 205-12, DKT. 205-13, DKT. 205-14, DKT. 205-15, DKT. 205-16, DKT. 205-17, See  DKT. 205-18, DKT. 205-19, DKT. 205-20.

representative was explicit in stating, "I can cover whatever they throw at us." See, DKT. 205-21.  The evidence supports the finding that Niagara was able to fully supply FEMA upon request, from September 8, 2017, after the credit arrangements were finalized, forward.

No evidence supports the assertion that FEMA reduced its order of 80 million liters of bottled water to 12 million liters of bottled water because Niagara advised that it could not supply the bottled water.  There is no email or text message from Ms. Mott to either Plaintiff, to Niagara, to Bering Straits, to Nestle, to FEMA or to any other water supplier, claiming that their inability to secure 80 million liters of bottled water resulted in the reduction by FEMA. In truth, FEMA was able to allocate its orders for bottled water to various contractors who were approved under the MATOC. The purpose of the MATOC was to potentially include various contractors to perform and to mitigate FEMA's (and disaster victims) risk against a contractor's lack of performance.

## V.   TSI PURCHASED NIAGARA WATER AT THE AGREED PRICE.

TSI asserts:

In September 2017, Niagara Bottling had stated  that it was unable to supply any of the requested water at the $0.165 per-liter rate that it had agreed to back in July 2017 when TSI had included Niagara as a member of the Contractor Team.

This is false, and is not supported by any evidence.  On September 7, 2017 at 10:22 a.m., Ms. Mott emailed the CFO of Niagara, stating in part, "If you want pre-payment send your EFT information to me and I will forward to BS." DKT. 205-8. On September 8, 2017, <u>Niagara guaranteed its price for the remainder of 2017</u>.  See, DKT. 205-11.   The parties agreed to the price of the water at 0.1625 per liter--- less than the $0.165 cited above.

The record establishes conclusively that TSI Contractor team partner Bering Straits bought the water from Niagara at .1625 cents a liter (which was significantly lower cost than Nestle). See, DKT. 89-9[2]  Bering Straits purchased Niagara bottled water as agreed to assist TSI to supply bottled water to FEMA.  It is simply false to assert that TSI was unable to purchase water directly from Niagara.  TSI chose to have Bering Straits purchase the water from Niagara.  Ms. Mott wrote on September 7, 2017:

> Bering Straits is a subcontractor to TSI on the FEMA contract. They are performing all logistics for water delivery. **They** also have a much larger balance sheet than TSI and **will be purchasing the water from Niagara for the TSI Contractor Team**. This will mitigate credit risk to Niagara due to the large water volumes FEMA has projected for the first task orders. (e.s.) See DKT. 205-6,

---

[2] Niagara Water provided pricing at $1.95 for 24 half liters of bottled water or $0.1625 cents per liter of bottled water.

TSI argues that since TSI did not purchase the bottled water directly, it owes Plaintiffs nothing under the Consulting Agreement.  This argument is negated by the Consulting Agreement which provides:

> TSI agrees to pay GEP and AI a commission of twenty-five percent (25%) of the net income TSI actually realizes from amounts paid by the government agencies referenced in the Recitals including any other government agencies or customers with respect to subsequent contracts made by TSI for the supply of bottled water through Niagara Bottling, LLC.

The Consulting Agreement does not speak to which entity purchases the water, TSI or its contractor teaming partner (Bering Straits).  The Consulting Agreement entitles Plaintiff to payment if Niagara bottled water is purchased to supply bottled water to FEMA and if FEMA pays TSI for the supply of bottled water under TSI's contract with FEMA.  Niagara bottled water was purchased, TSI invoiced FEMA for the supply of bottled water (which includes the water itself and its delivery as contemplated by the contract documents between FEMA and TSI) and FEMA paid for the supply of bottled water.  The record clearly establishes that TSI arranged for Bering Straits to purchase the bottled water because it chose to enter a credit agreement to fulfill TSI's Contract with FEMA.  This does not extinguish TSI's liability to Plaintiffs.

## VI.   FEMA's CONTRACT AMENDMENT FOR DROP TRAILER DELIVERY IS WITHIN THE SCOPE OF THE CONSULTING AGREEMENT AND THE CONTRACT BETWEEN FEMA AND TSI FOR THE SUPPLY OF BOTTLED WATER.

TSI argues that FEMA's modification for drop trailer delivery is a new, separate contract.  That claim is simply not so.   The record establishes that the addition of the requirement for drop trailers was the result of multiple emails from FEMA to Ms. Mott to ensure that the water arrived in containers so that it could be shipped on trailers and moved to different locations as needed within Puerto Rico. FEMA's P0001 modification states: "Drop trailer per day rate is applied only for the actual number of days when FEMA is in possession of containers for water drop off at Puerto Rico for each container." See, DKT. 96-28.  TSI claimed that the containers were delivered before the agreement for the drop trailer rate was agreed to, but that claim is not supported by the evidence.   Emails from FEMA to Ms. Mott and contracts between Bering Straits and Sea Cube Container Leasing establish that this is false.

TSI claims that the November 6, 2017 modification for FEMA to lease shipping containers at rate equal to the drop trailer rate previously set forth in CLIN 003A is unrelated to the delivery of bottled water in Puerto Rico.  TSI argues that while the drop trailer rate was used, the term is explicitly for rental of shipping containers and not drop trailers.  TSI claims that no drop trailers were part of the delivery of bottled water prior to the containers being offloaded from ships from the

mainland.  But, correspondence between TSI and FEMA establishes that FEMA needed the water in containers and that the terms "drop trailer" and "container" are used interchangeably.

TSI claims, "FEMA made the distinct, separate, new contract to rent empty containers, FEMA kept the containers anywhere from four to nine months."  But, the record establishes that the bottled water needed to be delivered in containers so that FEMA could stage and move the containers of bottled water around Puerto Rico. On October 6, 2017 (a month before FEMA issued the modification (DKT. 96-28)), FEMA emailed TSI to ensure that the bottled water was in containers. See, DKT. 203-1[3].

Ms. Mott suggested in response to the October 6, 2017 email that the drop trailer CLIN needed to be added to the agreement as TSI would be charged extra if FEMA kept shipping containers longer than 5 days.  But FEMA replied that it would need to add the drop trailer rate to TSI's delivery order, since the containers were

---

[3] FEMA advised that it would be added and to ensure that the bottled water was delivered in drop containers that would stay in FEMA's possession. See DKT. 203-2, 203-3, 203-4.  On November 2, 2017, Ms. Mott (TSI) inquired of FEMA, "Please advise of the status of the container MOD to include the drop trailer fee." (DKT. 96-27). On November 6, 2017, FEMA issued MOD 01 for the Delivery Order under the MATOC agreement, to "add CLIN 0002 Drop Trailer ...at $175/container/day rate for each container dropped and in possession of FEMA..." (DKT. 96-28).  Drop Trailer per day rate is applied only for the actual number of days when FEMA is in possession of containers for water drop off at Puerto Rico for each container.

required to be in FEMA's possession while in Puerto Rico, consistent with the MATOC requirement of 30 days or more.  While TSI suggested an add-on fee, under the existing contract and task order, FEMA itself applied the full drop trailer rate which was part of TSI's RFP submission, as required under procurement regulations. This was not empty container rental as claimed by TSI.

Drop Containers are drop trailers if FEMA determines they are under their contract.  FEMA can require the shipping container delivery of bottled water from the mainland under this emergency scenario and direct TSI's performance under its contract.  This is why TSI contracted to have all of the procured water transferred (at Zone 1 in Jacksonville) from 53' tractor trailers in to 695 40' shipping containers for barge transport to Puerto Rico. When FEMA took possession of the 695 containers of water and used them for bottled water storage and transportation in Puerto Rico, they incurred a drop trailer rate for the "actual number of days when FEMA is in possession of containers for water" (DKT. 96-28, pp.2), as stated in the contract modification, which is FEMA's prerogative.   It is not a new contract.

TSI argues the incorrect conclusion: "FEMA must have drawn the legal conclusion that its need for the containers was completely unrelated to the purchase and delivery of bottled water under CLIN 0002AA." (DKT. 209, p. 24). Drop trailer (possession of containers of bottled water) is directly related to the bottled water supply contract and delivery of the bottled water supplied. Delivery of bottled water

12

in shipping containers over water or tractor trailers on the mainland, or whatever method FEMA required was always part of the performance of the contract under the Consulting Agreement.

While Ms. Mott claims that she did not contemplate this specific situation, the FEMA RFP, FEMA Statement of Work, TSI's bid submission and the Consulting Agreement did. FEMA sought a per day rate per drop trailer in its RFP response and FEMA paid that rate with regard to the supply of bottled water to Puerto Rico. This rate that FEMA paid was part of the transportation element of the MATOC and was contemplated as part of the Consulting Agreement upon plain reading of the terms of the document.

### VII. TSI HAS NOT FULLY ACCOUNTED FOR GROSS REVENUE PAID BY FEMA AND OWED UNDER THE CONSULTING AGREEMENT AND INSTEAD HAS ONLY PAID PLAINTIFFS FOR DELIVERY OF BOTTLED WATER TO ZONE ONE IN JACKSONVILLE.

FEMA paid TSI a total of $37,579,577.37 for the supply of bottled water to Puerto Rico under the MATOC. Both Plaintiffs were only paid for delivery of bottled water to Zone 1 (in Jacksonville, Fl. and Savannah, Ga). Plaintiff GPDEV was paid only for Niagara water to Zone 1. Plaintiff Simons Exploration was paid for both Niagara and Nestle water to Zone 1. TSI claimed gross revenue of $4,417,419.60 for Nestle water (See attached Exhibit A, TSI 67) and $4,689,477.27 for Niagara water or a total of $9,106,896.87 for both (See attached Exhibit B, TSI

68).  The Zone 1 only payment to Plaintiffs did not conform to FEMA's payment to TSI.

FEMA paid TSI $18,338,822.81, for what Ms. Mott's payment voucher invoice described to FEMA as follows:  "CLIN 0002AA: Bottled Water to PR Supply and deliver to PR 12,479,040 LITERS Bottled Water in Containers."  See DKT. 123-1.  TSI contends that it paid Plaintiffs for one contract line item (0002AA) and not the other (0016), but that is not so.  (See DKT. 96-28, FEMA's P00001 Modification for description under the Task Order).  TSI did not pay Plaintiffs 25% of Net Income derived from FEMA's payment for delivery of bottled water in drop containers to Puerto Rico.

FEMA paid TSI an additional $19,240,725.00[4] for the delivery of bottled water in drop trailer containers, what Defendant identifies as the CLIN 0016 payment.  Plaintiffs contend that the total $37,579,577.37 should be considered Gross Revenue under the Consulting Agreement. Even if the Court were to consider only the Niagara portion of Gross Revenue, TSI has failed to live up to its obligations under the Consulting Agreement.

---

[4] On October 13, 2017, Sea Cube Container Leasing executed a contract with Bering Straits to lease containers for bottled water.  Sea Cube charged Bering Straits a fee of **$1.25** per day, per container (See attached Exhibit C, Bering Straits 7570-7594). TSI charged FEMA **$175.00**, per day per container (FEMA held the containers for a total of **109,947** container days).  This represents highly advantageous mark-up of ***13,108%.***

14

<u>**ARGUMENT AND MEMORANDUM OF LAW**</u>

**1.    Delivery of bottled water in containers was always contemplated by the agreement between TSI and FEMA and the Consulting Agreement.**

TSI argues that the silence of the Consulting Agreement as to any possibility of subsequent use of drop trailers or containers shows this was not contemplated by the parties.  But, the Consulting Agreement did contemplate a contract for the supply of bottled water with drop trailer included as part of delivery requirements. Further, there was no separate contract, there was a different line for the same Task Order under the MATOC to include drop container.   Further, drop trailers were part of the scope of work that TSI bid on at the outset of this procurement.  The drop trailer rate that TSI utilized as part of its bid submission on July 6, 2017, is what TSI was paid for drop trailers in Puerto Rico.  FEMA directed that the bottled water be shipped in containers so it could efficiently move the bottled water to a different emergency site or hold them as needed for distribution for a period of 30 days or more--- this was all contemplated by the parties agreement.

The Consulting Agreement provides that TSI agreed to pay Plaintiffs a fee of twenty-five percent of the net amount of income TSI actually receives from amounts invoiced to and paid by said agencies and/or customers. The Consulting Agreement provides a definition of Net Income.  Net Income is gross revenue less costs (Cost of Goods Sold + Transportation + Direct labor expenses). Gross revenue has to mean **<u>all</u>** amounts paid by FEMA under the MATOC for the supply of Niagara bottled

water (subsequently modified to include Nestle water).  Gross revenue is then to be reduced by the cost of the goods sold, Transportation costs, and Direct labor expenses (not limited to water only as Defendant claims).

The RFP specifies that "drop trailer" is an item that was bid on by TSI.  The Consulting Agreement further specifies in pertinent part of Paragraph:

> TSI agrees to pay GEP and AI a commission of twenty-five precent (25%) of the net income TSI actually realizes from amounts paid by the government agencies referenced in the Recitals including any other government agencies or customers with respect to subsequent contracts made by TSI for the supply of bottled water through Niagara Bottling, LLC. All of the parties to this agreement have the right to view upon demand the Prime Contract Task Order Awards, invoices from Navajo and any other direct expense receipts applied to reduce net income…

The word CLIN is not present in the Consulting Agreement.  There is nothing in the Consulting Agreement that limits Plaintiffs to a particular CLIN--- or a particular itemization.  The delivery of bottled water in drop trailer containers was contemplated by the FEMA Solicitation, TSI's RFP submission, and FEMA paid TSI for the bottled water delivery at the drop trailer rate.

Defendant claims that the Consulting Agreement only applies to CLIN 0002A (See, DKT. 209, P. 19).  But again, the Consulting Agreement makes no reference to Contract Line Item Numbers (CLINs), instead the Consulting Agreement is explicit in stating:

> TSI agrees to pay GEP and AI a total success fee of twenty-five percent of the net amount of income TSI actually receives from amounts invoiced to and paid by said agencies and or customers.  Net income is defined as Gross Revenue less (Cost of Goods Sold + Transportation + Direct labor expenses).

This language does not speak to contract line item numbers, it speaks to the payment voucher invoices from TSI to the government agency.  It further provides that net income is defined as  Gross Revenue less (Cost of Goods Sold + Transportation + Direct labor expenses).  The term "Gross Revenue" means the money TSI actually receives from amounts invoiced to and paid by the government, under the MATOC.

Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent. *Polymers USA, LLC v. Tackett*, 135 S. Ct. 926 (2015); See also, *Dezer Intercostal Mall, LLC v. Seahorse Grill* 277 So 3d 187, (Fla. 3rd DCA 2019).  The Consulting Agreement encompasses the entirety of every MATOC task order paid by FEMA where TSI uses the supply of Niagara water (and Nestle water under subsequent modification).

Defendant argues that its expert, Mr. St. Moritz (Defendant's Government Contracting Expert), says if FEMA intended that the drop trailer be an integral part of water deliveries it would have been included as sub-CLIN under bottled water CLIN. (See discussion on Page 4, footnote 1 of Defendant's Motion (DKT 209)).

But this is for optional delivery.  Drop trailer delivery of bottled water rate was in MATOC specs that was incorporated as term of task order (i.e. that government could require). Further, this was made part of the delivery requirement for the bottled water, and is part of the contract for supply of bottled water thru Niagara (and Nestle). Either way, the Consulting Agreement entitles Plaintiffs to their negotiated percentage of the net income derived by TSI under the MATOC task order paid by the government for the supply of bottled water.

FEMA needed the bottled water in containers, so that the containers could be moved from place to place in Puerto Rico, to fulfill the government's needs, and to supply bottled water during the Hurricane Maria disaster. See DKT. 205-2, pp.2. The containers were included as part of the MATOC submission under the drop trailer rate.  FEMA paid TSI under the drop trailer rate that TSI submitted when it bid on the MATOC in July 2017, prior to the execution of the Consulting Agreement. While a disaster in Puerto Rico and resultant modifications by FEMA may not have been contemplated by Ms. Mott, it was contemplated by the Consulting Agreement as the Contract between TSI and FEMA provided that it could be required to drop trailer for 30 days or more and TSI submitted a rate for this transportation service to FEMA in its bid.

FEMA described the product/service of drop trailers as "Beverages/Nonalcoholic" Delivery location code: Puerto Rico" this same code

applies to CLIN 002AA. See, DKT. 96-28.  The process of delivery continued while the containers were in FEMA's possession until FEMA advised that the water was delivered and then the containers were returned to TSI's possession in Puerto Rico for shipment back to the mainland.  The containers are part and parcel of the delivery of the bottled water that had to be delivered in containers over a period of time.

### 2. Plaintiffs did not breach the Consulting Agreement.

TSI argues that Plaintiffs breached the Consulting Agreement when Niagara advised that it was in an oversold situation on September 6, 2017.  On page 4 of Defendant's Motion for Summary Judgment, TSI sets out the requirements of the RFP for the FEMA MATOC providing:

> In the Technical Proposal, a respondent was required to demonstrate to FEMA that it had the capability to procure for FEMA up to 2,700,000 liters of bottled water within 72 hours of FEMA approval to be delivered to one of four designated zones within the continental United States ("CONUS").

TSI claims that Plaintiffs breached the Contract by failing to procure enough water. But, TSI omits that the MATOC solicitation provided that a bidder had to show the capacity to procure 2.7 million liters of bottled water within 72 hours when the initial September 6, 2017 request from FEMA was for a bid on 48 million liters of bottled water with only three and a half hours to respond, when the record establishes that TSI had no credit established and Niagara informed TSI from the outset of their engagement that their quote was subject to availability.  These facts

cannot support a breach of contract claim, even if Plaintiffs had a minimum procurement supply obligation in the Consulting Agreement, this FEMA request for a bid was rescinded anyway, which is fatal to any breach claim.

Ms. Mott asserts that FEMA threatened TSI with a $1 million dollar fine because it could not supply the water it needed, but nothing supports this assertion. There are no emails from Ms. Mott to either Plaintiff demanding that Niagara provide more water. The record establishes that Niagara could handle whatever was thrown at it. There is no showing that Niagara could not provide the supply needed.

Ms. Mott makes claims, without any evidence at all, that TSI was as only able to fill 12,479,040 liters of bottled water and that it lost the 80 million liter order because of Niagara inability to provide TSI or Bering Straits. There is no documentary proof that FEMA's order was reduced because of TSI's inability to obtain a water supply. There are no emails or other communications that have been produced in discovery that support such a claim. On the other hand, FEMA has the ability to allocate bottled water delivery to various vendors under the MATOC and it makes sense that FEMA would divide the order up among various vendors as opposed to providing the entire order for Puerto Rico to one vendor.

Regardless, there is no duty placed on Plaintiffs to secure any particular amount of water under the Consulting Agreement. They are paid profits under contract supplied thru Niagara (and Nestle as a result of contract modification).

Not only is TSI's argument concerning the September 6, 2017 order factually incorrect, legally there is no provision within the Consulting Agreement that provides that Plaintiffs had to procure a certain amount of water at any time certain. The agreement provides that Plaintiffs are to be paid because they secured a water provider.  There is no term of the Consulting Agreement that Plaintiffs breached and Defendant cites to none.  There is no failure of consideration because Niagara did supply water for use in the contract to supply water.

Indeed, TSI argues on page 8 of its Motion that Plaintiffs were not required to do anything other than utilize their relationship to secure bottled water as described and contemplated in the RFP and in the MATOC.  This is true.  Plaintiffs introduced TSI to a bottled water supplier, who worked with FEMA to show its capacity to meet the terms of the RFP and TSI used Niagara water to fulfill its contract obligations with FEMA whose profits Plaintiffs would share.

To the extent that Defendant TSI is unable to sell water to the government, Plaintiffs likewise are not paid.  However, this does not enable TSI to avoid or to reduce the amount owed to Plaintiffs for the supply of bottled water procured by Plaintiffs.

Defendant claims that TSI could not procure water directly from Niagara and claim that their inability to purchase from Niagara was Plaintiff's fault.  The Consulting Agreement negates this argument.  If Niagara water is procured and the

21

government pays TSI for the supply of bottled water, the Consulting Agreement net income percentage payment must be paid.  It does not say who has to purchase the water, simply that TSI uses the bottled water to sell to the government.  Further, TSI arranged for Bering Straits to purchase the water from September 6, 2017 forward. When Bering Straits purchased the water at the TSI contract team rate, TSI used it to fulfill the water component of the agreement. This is a frivolous argument.

### 3.    TSI's Fraud Affirmative Defense is not supported by the facts or the law.

TSI asserts that Plaintiffs falsely represented that they had the capability of obtaining the amount of Niagara water required by the RFP and that Plaintiffs should have known that they could not provide "up to 2,700,000 liters of bottled water within 72 hours of FEMA approval" as required by the RFP.  See page 33 of DKT 209. First, the Consulting Agreement states that TSI has procured, with the assistance of GEP and AI, a supply of bottled water supplied by Niagara Bottling, LLC, to sell to the US Department of Homeland Security, Federal Emergency Management Agency, and other agencies.  As a result of Plaintiff's introduction to Niagara Bottling, LLC, making it possible for TSI to submit a successful bid under the MATOC, TSI sold millions of liters of bottled water to FEMA.

There is no false statement that Defendant has identified.  TSI has the burden of proof to show that Plaintiffs knew that Niagara would not supply bottled water-- when the record establishes that Niagara could provide the water and, in fact,

did provide bottled water that was purchased and sold to FEMA. The claim that Bering Straits bought the water and then sold it to TSI at a premium has no evidentiary support. Bering Straits bought the water from Niagara at the contract team rate negotiated with Plaintiff's assistance. The undisputed facts establish that TSI utilized Bering Straits financing and agreed to pay Bering Straits a 33% return on its investment for its credit. There is no damage that Defendant has identified. This Court should grant partial summary judgment in Plaintiffs' favor on TSI's fraud count.

## **CONCLUSION**

There is no legal basis or factual basis to support Defendant's Motion for Summary Judgment, if anything, judgment in Plaintiffs' favor relative to Affirmative Defenses 5 and 6 should be rendered at this time.

Respectfully submitted this 23rd day of October, 2020.

*s/ Leonard M. Collins*
LEONARD M. COLLINS (FBN 423210)
GrayRobinson P.A.
301 S. Bronough Street
Suite 600
Tallahassee, FL
Telephone: (850) 577-9090
Leonard.Collins@gray-robinson.com
madison.harrell@gray-robinson.com

and

M. Stephen Turner P.A.
215 South Monroe Street, Suite 400
Tallahassee, FL  32301
Telephone: 850.681.6810
Mstephenturner.pa@gmail.com

**Attorneys for Plaintiffs, GPDEV, LLC and
Simons Exploration, Inc.**

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

In accordance with Local Rule 7.1(F), the Plaintiffs certify that this memorandum contains 5,292 words.  The count was done using word count on Microsoft Word and excluding the case style, signature block, and certificate of compliance and service.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the electronic copy served on counsel for Defendant below via electronic mail, this 23rd of October, 2020.

Randall Leshin
RANDALL LESHIN, P.A.
1975 E. Sunrise Blvd., Ste. 504
Ft. Lauderdale, FL 33304
rleshin@leshinlawfirm.com
email@leshinlawfirm.com

Wayne L. Smith
The Smith Law Firm
509 Whitehead Street
Key West, FL 33040
wsmith@thesmithlawfirm.com
court-filings@thesmithlawfirm.com

_s/ Leonard M. Collins_____
Attorney